IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN MARSHALL, | § | |
| LONG TRAN, and | § | |
| CHARLES JOHNSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 3:10-CV-1422-K |
| EYEMASTERS OF TEXAS, LTD., | § | |
| EYE CARE CENTERS OF AMERICA, | § | |
| INC., and EYEMASTERS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Amended Motion for Conditional Certification (Doc. No 32) and Defendants' Objections to and Motion to Strike Portions of Declarations (Doc. No. 39). The Court has considered the motions, responses, replies, evidence submitted by the parties, and the applicable law. Because this Court determines that individual circumstances predominate such that the potential class members Plaintiffs seek to notify are not "similarly situated" as required by the Fair Labor Standards Act of 1938 ("FLSA"), Plaintiffs' Motion for Conditional Certification is **DENIED**. The Court reaches the same conclusion whether or not the evidence to which Defendants object is considered. As such, Defendants' Objections to and Motion to Strike is **DENIED as moot**.

I.	Background

Defendants Eyemasters of Texas, Ltd., Eye Care Centers of America, Inc., and Eyemasters, Inc. are affiliated companies that produce and sell eyewear and perform related services.  Each location contains a lab where glasses are cut in addition to a retail section where lenses and frames are sold.  For the purposes of this motion, the Court will refer to all three companies collectively as "Eyemasters."

A typical Eyemasters store employs a general manager, retail supervisor, lab supervisor, district technical manager, lab technicians, and various hourly employees.  However, staffing varies from location to location.  For example, one store may not generate enough sales to justify a retail supervisor.  Another may have a district technical manager it shares with other branches, but no lab supervisor.  The employees each store requires depends on the store's needs and past performance.

General managers are ultimately responsible for the operation and success of their Eyemasters branches.  Retail supervisors oversee their store's sales operations.  The lab supervisor recruits, trains, and supervises lab technicians.  District technical managers act as lab supervisors in multiple stores when individual branches do not require their own lab supervisors.  General managers, retail supervisors, lab supervisors, and district technical managers were all salaried employees through the end of 2009.  Since then, retail supervisors and lab supervisors were reclassified as hourly employees.

Lead Plaintiffs Steven Marshall, Long Tran, and Charles Johnson are former employees of Eyemasters. Both Mr. Marshall and Mr. Tran were general managers and Mr. Johnson was a lab supervisor. All three worked at locations in the Dallas/Fort Worth area. In declarations filed in support of this motion, Plaintiffs allege that they were not compensated for working more than forty hours per week. Specifically, Plaintiffs allege that: (1) Eyemasters is a covered employer under the FLSA, meaning it must abide by FLSA requirements; (2) Plaintiffs performed duties which would entitle them to overtime compensation under the FLSA; and (3) Plaintiffs did not receive overtime compensation. Plaintiffs also allege that this practice was wide-spread within Eyemasters, and that there are other employees who were treated similarly.

Plaintiffs filed this lawsuit on July 20, 2010. In this amended motion for conditional certification, filed December 16, 2010, Plaintiffs are seeking an order from this Court requiring Eyemasters to disclose the names and contact information of other potential class members.

## II. Legal Standard

The FLSA, 29 U.S.C. § 201 *et seq.*, requires covered employers to pay non-exempt employees at least 150% of the employees' normal hourly pay for each hour the employee works in excess of forty hours per workweek. 29 U.S.C. § 207(a) (2010). "Exempt employees," ones that do not qualify for overtime compensation,

are most commonly executive, administrative, or professional employees, though others are listed within the FLSA. 29 U.S.C. § 213(a) (2010); *see also Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 492 (5th Cir. 2003).

The FLSA provides a remedy to employees when employers violate the requirements of Section 207(a). 29 U.S.C. § 216(b) (2010). This remedy allows a plaintiff to bring suit on his own behalf or for himself and on behalf of others "similarly situated." *Id*; *see also Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1204 (1981). Any employee wishing to join such a lawsuit must file a consent with the court. 29 U.S.C. §216(b) (2010).

### A. What is "similarly situated"?

There are two schools of thought on how to determine if plaintiffs are "similarly situated" within the meaning of Section 216(b). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–15 (5th Cir. 1995), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003). Both draw their names from federal district court cases: *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), and *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990). The *Lusardi* approach is a two-step process: (1) the "notice stage" consists of examining pleadings and any evidence advanced to determine if an order facilitating notice to potential class members is justified; and, if so, (2) the "de-certification stage," usually following discovery, where the court decides if the class is still comprised of "similarly situated" plaintiffs. *Mooney*, 54 F.3d

at 1213–14. Under *Shushan*, the same analysis for class certification under Federal Rule of Civil Procedure 23 is used: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 1214.

Though the Fifth Circuit has not endorsed either analysis, it has indicated in the past that FLSA representative actions are fundamentally different than class actions certified under Rule 23. *Mooney*, 54 F.3d at 1216 (declining to choose); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (the "opt in" procedure in class-based FLSA suits distinguishes them from the more familiar class actions certified under Rule 23 where class members must "opt out" of the class). The *Lusardi* approach has been used by the majority of federal courts, including the ones in this district. *Clark v. City of Fort Worth*, No. 4:10-CV-519-A, 2011 WL 121896 (N.D. Tex. Jan. 11, 2011); *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007) (compiling cases). Therefore, this Court will utilize the two-step *Lusardi* analysis to determine FLSA class certification in this case.

### B.  Burden under *Lusardi*

Plaintiffs bear the burden of showing there are other employees "similarly situated." *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706 (N.D. Tex. 2007). This is a fairly lenient standard. *Mooney*, 54 F.3d at 1214. The district court has discretion to facilitate notice to potential plaintiffs by ordering production of names and addresses of current or former employees. *Hoffman-La Roche Inc. v. Sperling*, 493

U.S. 165, 169 (1989).

III. Analysis

At the notice stage, where we are in this case, plaintiffs must show that they and potential class members were "similarly situated" in their job requirements and pay provisions. *Songer*, 569 F. Supp. 2d at 706. Though it is admittedly lenient, the *Lusardi* approach still requires plaintiffs to present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. . . ." *Mooney*, 54 F.3d at 1214 n. 8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Collective treatment, like the type Plaintiffs are seeking in this motion, promotes judicial efficiency when there is a nexus between named plaintiffs and potential class members in the law and the facts. *See Cantu v. Vitol, Inc.*, No. H-09-0576, 2009 WL 5195918 at *4 (S.D. Tex. Dec. 21, 2009) (citing *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

The allegations contained in Plaintiffs' declarations, which are largely identical, can be summarized as follows:

(1) 80% of the Plaintiffs' time was spent either selling eyewear or producing glasses, 10% managing other employees, and 10% performing administrative tasks;

(2) Plaintiffs worked 50–60 hours per week;

(3) Plaintiffs carried out manual tasks, including stocking shelves, cleaning

> bathrooms, greeting customers, and running the cash register; and
>
> (4) Plaintiffs were not compensated for hours worked in excess of forty hours per week.

*See, e.g.*, Steven Marshall Decl., Pl. App. at 3–5. The gist of these assertions is that Plaintiffs were improperly classified as "exempt employees" and were not paid overtime compensation that they were allegedly due.

However, competing declarations from Eyemasters paint a different picture. A dozen current Eyemasters employees, who hold or have held every position listed by Plaintiffs, state their responsibilities were appreciably different. *See, e.g.*, Christina Motez Decl., Eyemasters App. at 33–35 ("I have never spent 80–95% of my time selling glasses."); Tom Patton Decl., *id.* at 20–22 ("To set an example for my associates, I do assist with some types of cleaning. . . I spend less than 5% of my time per week performing these tasks because my primary focus remains on managing my associates. . .").

From these diverging accounts, it appears that employees holding the same job title were performing different duties at different stores. Plaintiffs cite a list of cases for the proposition that the positions held by themselves and potential class members "need not be identical, [only] similar." *Ryan*, 497 F. Supp. 2d at 825; *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-776-D, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) (Fitzwater J.); *Barnett v. Countrywide Credit Indus., Inc.*, No. 3:01-CV-1182-

M, 2002 WL 1023161 (N.D. Tex. May 21, 2002) (Lynn, J.). However, this case, more than the cases Plaintiffs have cited, seems to turn not only on whether or not multiple positions are similar to each other, but also whether employees within the same position were fulfilling the same tasks. It is clear, from the briefing on this motion alone, that an individual fact-finding will be necessary for each of the named plaintiffs to determine if FLSA violations occurred. *Compare* Dianna Golden Decl., Pl. App. at 7–10 *with* Shawn Dafforn Decl., Eyemasters App. at 14–19 (supervisor and subordinate disagreeing on the amount of responsibility subordinate had, orders regarding hours subordinate must work, etc.). This Court sees no reason why the addition of "hundreds of employees," Reply at 3, would require anything different. As such, certification of this proposed class of allegedly affected Eyemasters employees would not promote judicial efficiency. *Cantu,* 2009 WL 5195918 at *4 .

## IV. Conclusion

Plaintiffs have failed to show that the potential class members they seek to notify are "similarly situated" as to their job requirements and daily tasks. Therefore, Plaintiffs' Motion for Conditional Class Certification is **DENIED**. Because the Court reaches the same conclusion whether or not all of Plaintiffs' evidence is considered, Defendants' Objections to and Motion to Strike is **DENIED as moot**.

**SO ORDERED.**

Signed February 10th, 2011.

*[signature: Ed Kinkeade]*
ED KINKEADE
UNITED STATES DISTRICT JUDGE